<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| CHRISTOPHER MCCRAY, | : | Civil No. 12-2356 (RBK) |
| Plaintiff, | : | |
| v. | : | **MEMORANDUM OPINION & ORDER** |
| CHRISTOPHER HOLMES, | : | |
| Defendant. | : | |

This matter comes before this Court upon Plaintiff's submission of a civil complaint accompanied by his application to proceed in this matter <u>in forma pauperis</u>. <u>See</u> Docket Entries Nos. 1 and 1-1. Based on Plaintiff's affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff <u>in forma pauperis</u> status pursuant to 28 U.S.C. § 1915(a) and will order the Clerk to file the complaint. The Court will dismiss Plaintiff's claims – with some claims being dismissed with prejudice, and others being dismissed without prejudice – and will allow Plaintiff an opportunity to file an amended complaint curing the deficiencies of the latter line of claims and complying with the guidance provided in this Memorandum Opinion and Order.

1. The Court must dismiss, at the earliest practicable time, certain <u>in forma pauperis</u> and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. <u>See</u> 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A; 42 U.S.C. § 1997e. In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally. <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519,

520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  However, Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  See also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555; Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). The Supreme Court has emphasized that, when assessing the sufficiency of any civil complaint, a court must distinguish factual contentions - which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted - and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although the Court must assume the veracity of the facts asserted in the complaint, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" Id. (citation omitted); see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Yet, where a complaint could, potentially, be remedied by an amendment, a district court would not dismiss the complaint with prejudice.  See Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002).

2. Here, Plaintiff's complaint asserts that, upon his arrival to his current housing facility, that is, to the South Woods State Prison ("SWSP"), Plaintiff expressed his preference for being served a kosher diet. See Docket Entry No. 1, at 1-2.  The complaint also asserts that, after receiving one or two kosher meals, Plaintiff was informed that no kosher diet would be served to him in the future.  See id. at 3.  Making a leap of logic not entirely clear to this Court, Plaintiff asserts that denial of kosher meals violated his rights because Plaintiff is an African-American, see id. at 3; Plaintiff also maintains that a statement

      made by a certain prison official (to the effect that Plaintiff's continuous insistence on having kosher diet might, hypothetically, result in a disciplinary charge against Plaintiff) violated Plaintiff's constitutional rights. See id. at 4. Finally, Plaintiff asserts that his constitutional rights were also violated because he, allegedly, filed an administrative grievance (seemingly, requesting a kosher diet), but that grievance was not responded to. See id.

3. The complaint clarifies that Plaintiff seeks: (a) a declaratory judgment stating that the aforesaid denial of kosher diet was unconstitutional; (b) injunctive relief in the form of an order directing service of kosher diet to Plaintiff; and (c) compensatory and punitive damages in the amount of $50,000 (sought, seemingly, from the sole Defendant named in this matter, that is, Christopher Holmes ("Holmes"), who is the Assistant Superintendent of SWSP). See id.; see also Maqbool v. Univ. Hosp. of Med. & Dentistry, 2012 U.S. Dist. LEXIS 81895, at *2 (D.N.J. June 13, 2012) (clarifying Holmes' employment title).

4. To the extent Plaintiff tried to implicate Holmes by asserting that he wrote a letter to him (or to any other prison official), Plaintiff's claims are facially deficient. "[T]he First Amendment does not impose any affirmative obligation on the government to listen, to respond or . . . to recognize [a grievance]." Smith v. Arkansas State Highway Emp., Local 1315, 441 U.S. 463, 465 (1979); Minnesota State Bd. Community Colleges v. Knight, 465 U.S. 271, 285 (1984) ("Nothing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require

government policymakers to listen or respond to individuals' communications").[1] Since the deficiency of Plaintiff's challenges based on the alleged failure to respond to his grievance cannot be cured by repleading, that claim will be dismissed with prejudice.

5. Plaintiff's core claim appears to derive from his preference for consuming kosher diet rather than the meals served to the general prison population.[2] However, a prisoner is not constitutionally entitled to a kosher, Halal or any other form of religious diet simply because the prisoner prefers the taste, the packaging or any other properties of that fare. See, generally, Garraway v. Lappin, 2012 U.S. App. LEXIS 15776 (3d Cir. July 31, 2012)

   a.  The standard governing First Amendment "Free Exercise" claims is as follows:

   > Turner v. Safley, 482 U.S. 78 (1987), and Overton v. Bazzetta, 539 U.S. 126 (2003), contain the basic substantive legal standards governing [such claims. The Supreme] Court recognized in Turner that imprisonment does not automatically deprive a prisoner of certain important constitutional protections, including those of the

---

[1] Alternatively, if the Court were to construe this challenge as a due process claim, that claim would too be subject to dismissal as facially meritless. "Prisoners are not constitutionally entitled to a grievance procedure and the state creation of such a procedure does not create any federal constitutional rights." Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997). " Thus, a failure to respond to an inmate's grievances "does not violate his rights to due process and is not actionable." Stringer v. Bureau of Prisons, 145 F. App'x 751, 753 (3d Cir. 2005) (citing Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996)).

[2] General population inmates frequently perceive kosher diet as a more tasty one and, in addition, as the one ensuring a more sanitary food preparation. See, e.g., Tafari v. Brown, 2012 U.S. Dist. LEXIS 45054 (N.D.N.Y Mar. 6, 2012) (Jewish inmates [are] offered kosher meals; [h]owever, most . . . correctional facilities do not have kosher kitchens or facilities to prepare on-site kosher meals, so Jewish inmates . . . are served the [kosher cold alternative diet ('CAD').] A CAD meal typically consists of a sandwich made with kosher meat or cheese, condiments, chips, a cookie or cake, and juice. Some items for the CAD meals are prepared and packed at the [prison facility], in kosher compliant conditions, under rabbinical supervision, i.e. juices, salads, cold cuts and cheese. Some specific items, e.g. canned fruits, come through outside kosher suppliers. Such items come pre-packaged and sent to individual correctional facilities for use in preparing the CAD meals") (original brackets, ellipses and quotation marks removed).

> First Amendment.  [See Turner,] 482 U.S. at 93; see also O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987).  But[,] at the same time[,] the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere.  See, e.g., Turner, [482 U.S.] at 84-85.  As Overton . . . pointed out, courts owe "substantial deference to the professional judgment of prison administrators."  539 U.S. at 132.  And Turner reconciled these principles by holding that restrictive prison regulations are permissible if they are "'reasonably related' to legitimate penological interests," [Turner,] 482 U.S. at 87 . . . .

Beard v. Banks, 548 U.S. 521, 528 (2006).

The aforesaid Turner analysis is, however, conducted as a second step only, meaning that such analysis is warranted only if the allegations made by the plaintiff show that his/her beliefs are: (a) sincerely held; and (b) of religious – rather than other, e.g., gourmet – nature.  See DeHart v. Horn, 390 F.3d 262 (3d Cir. 2004).  "[T]he fact that prisoners' meals are not elaborate enough to meet the prisoners" dining preferences cannot serve as the basis for a viable claim."  Love v. N.J. Dep't of Corr., 2011 U.S. Dist. LEXIS 10102, at *74 (D.N.J. Jan. 31, 2011); see also Tisdale v. Dobbs, 807 F.2d 734 (8th Cir. 1986) (First Amendment rights of Muslim prisoner were not violated where, after daily religious fast, he was provided with merely a "sack lunch" consisting of two bologna sandwiches, since the facts alleged did not suggest that he could not eat these sandwiches, e.g., because he was vegetarian or because bologna was made of pork which he could not eat); accord Patel v. United States Bureau of Prisons, 515 F.3d 807 (8th Cir. 2008) (affirming dismissal of an inmate's claims since the inmate did not explain why less expensive food items prepared in accordance with the inmate's religious

beliefs could not serve as a substitute for kosher meat entrees); Johnson v. Horn, 150 F.3d 276 (3d Cir. 1998) (while prison officials are required to provide Jewish inmates with "a" kosher diet, service of cold diet complying with the requirements of kashrut did not violate the inmates' rights), overruled on other grounds, DeHart, 227 F.3d 47; cf. Kretchmar v. Beard, 241 F. App'x 863 (3d Cir.) (dismissing an inmate's appeal since the Third Circuit precedent made it clear that inmate's rights were not violated by fact that he was served non-rotating menu of cold food items in response to his request for Kosher diet), cert. denied, 552 U.S. 1049 (2007).

b. Moreover,

> [t]he mere assertion of a religious belief does not automatically trigger First Amendment protections, however. To the contrary, only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection. As [the Court of Appeals] explained in Africa v. Pennsylvania:
>
>> The relevant case law in the free exercise area suggests that two threshold requirements must be met before particular beliefs, alleged to be religious in nature, are accorded first amendment protection. A court's task is to decide whether the beliefs avowed are (1) sincerely held, and (2) religious in nature, in the claimant's scheme of things. [See] United States v. Seeger, 380 U.S. 163, 185 (1965); Callahan v. Woods, 658 F.2d 679 (9th Cir. Oct. 5, 1981). If either of these two requirements is not satisfied, the court need not reach the question, often quite difficult in the penological setting, whether a legitimate and reasonably exercised state interest outweighs the proffered first amendment claim.
>
> 662 F.2d 1025, 1029-30 (3d Cir. 1981).

DeHart v. Horn, 227 F.3d at 51-52.

  c.  In the case at bar, Plaintiff's complaint, while well-detailed and even elaborate in terms of his accounts as to the demands for kosher meals that he made upon his prison officials, is strikingly void of any facts suggesting that Plaintiff is a religious Jew stickily observing the Jewish laws, including the laws of Kashrut.[3] See, generally, Docket Entry No. 1.  Moreover, and oddly enough, at no point the complaint averred to Plaintiff's regular attendance of Sabbath prayers and/or to his dedicated celebrations of Jewish High Holidays, and/or to his wearing a tallit katan and tallit godol, and/or to his use of teffilins, and/or to his application to the prison officials for preservation of his facial hair and for a permission to grow payoss, etc.[4] – the facts which, had they been present and duly asserted in the complaint, would have suggested Plaintiff's faithful adhesion to Judaism.  See id. Indeed, Plaintiff's complaint does not suggest he shared his kosher meal woes with his rabbi (in fact, the complaint does not even hint that Plaintiff uses services of a Jewish rabbi at all).  See id.  Furthermore, while complaining about the alleged denial of a kosher diet, Plaintiff at no point even referred to himself as a "Jew": he identified himself as, and only as, an African-American, leaving it to this Court's imagination to determine Plaintiff's religious beliefs, if any.  See id.

---

 [3]  "The word kosher is derived from the Hebrew 'kashrut' and means 'fit' or 'ritually correct' according to Jewish dietary laws." Barghout v. Bureau of Kosher Meat & Food Control, 66 F.3d 1337, 1341 (4th Cir. 1995) (citing Ran-Dav's County Kosher, Inc. v. State, 129 N.J. 141, 144 (1992)).

 [4]  Plaintiff's photo, depicted on his New Jersey Department of Corrections website, shows a fully shaved African-American male (with hair shaved off his head too).  See <<https://www6.state.nj.us/DOC_Inmate/details?x=1213983&n=0>>.

      Granted the foregoing, this Court has no basis to presume that Plaintiff's Jewish beliefs are sincere (indeed, as of now, they appear non-existing at all), or that Plaintiff's preference for kosher meals is of a religious, rather than a purely gourmet (or sanitary, or in-prison-status, etc.) nature.

    d.    So pled, Plaintiff's challenges are subject to dismissal, as facially meritless. However, while this Court recognizes that a religious Jew is highly unlikely to omit announcing himself/herself as such (and it is equally unlikely for a religious Jew to omit elaborating on or, at the very least, mentioning the sincerity of his/her religious beliefs), this Court cannot completely rule out the possibility that Plaintiff, while being a religious Jew (that is, a Jew who, by his strict observance of the Jewish laws finds himself compelled to consume only kosher diet), might have omitted to state the vital facts of his religious adhesion in his complaint. In other words, being mindful of Plaintiff's pro se litigant status, the Court finds it warranted to give Plaintiff the benefit of the doubt and to allow him an opportunity to replead his First Amendment "Free Exercise" challenges based on the alleged denial of kosher meals.[5]

---

[5] The Court, however, takes this opportunity to remind Plaintiff that all assertions made in Plaintiff's pleadings, including in his amended complaint, are deemed statements made under oath, and strongly urges Plaintiff to avoid making factual assertions that might be shown false as a result of discovery (which development might subject Plaintiff to sanctions, if appropriate). Simply put, the Court urges Plaintiff to take this litigation seriously. "The courts in this nation stand ready to address challenges brought by litigants in good faith. Which, in turn, means that the judiciary - including the Judges in this District - expect litigants to treat their litigation with utmost seriousness, without abusing legal process and without unduly testing of the resolve or common sense of the judiciary." In re Telfair, 745 F. Supp. 2d 536 (D.N.J. Oct. 15, 2010).

6.  Plaintiff's equal protection challenges, that is, if such challenges were intended, appear derivative from his above-discussed First Amendment claims in the sense that this line of Fourteenth Amendment allegations might be viable if, and only if, Plaintiff's First Amendment claims survive sua sponte screening.  Taking notice of such a scenario, the Court finds it warranted to detail to Plaintiff the substantive test governing equal protection claims.

    a.  The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. This is not a command that all persons be treated alike, but, rather, a direction that all persons similarly-situated be treated alike.  See City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439  (1985).  "The Equal Protection Clause commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws.'" Vacco v. Quill, 521 U.S. 793, 799 (1997).  "The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race," Washington v. Davis, 426 U.S. 229, 239 (1976), or any other suspect classification.  See, e.g., Bakke v. California Bd. of Regents, 438 U.S. 265, 291 (1978) ("the guarantee of equal protection cannot mean one thing when applied to one individual and something else when applied to a person of another color" and "racial and ethnic distinctions of any sort are inherently suspect and thus call for the most exacting judicial examination").  Thus, although lawful imprisonment entails the necessary withdrawal or limitation of many rights and privileges, see Pell v. Procunier, 417

       U.S. 817, 822 (1974), inmates have a constitutional right to be free from discrimination based on race and other "suspect classifications," such as alienage or country of origin. See Angstadt v. Midd-West Sch. Dist., 377 F.3d 338 (3d Cir. 2004); Bentley v. Beck, 625 F.2d 70, 70-71 (5th Cir. 1980).

b. Here, Plaintiff attempts to stitch his denial-of-kosher-meals claims to him being an African-American. However, even in the event Plaintiff succeeds at establishing the sincerity of his Jewish religious beliefs (i.e., the beliefs mandating him to consume only kosher meals), Plaintiff's equal protection challenges might present a plausible claim within the meaning of Iqbal only in the event he asserts facts showing that: (i) there are other, non-African-American, Jewish inmates at SWSP who have the same Jewish religious beliefs and maintain the same religious practices as Plaintiff, e.g., in terms of attending Sabbath prayers, observing Sabbath rituals, celebrating Jewish High Holidays, wearing tallit katans and tallit godols, using teffilins during prayers, seeking preservation of facial hair and  permission to grow payoss, obtaining regular rabbinical counseling, etc.; (ii) these non-African-American Jewish inmates are served kosher meals; while (iii) all Jewish African-American inmates at SWSP (Plaintiff included) are denied kosher meals, even though all these Jewish African-American inmates have the same Jewish religious beliefs and religious practices as the non-African-American Jewish inmates who are served kosher meals. Without stating facts making such a showing, Plaintiff cannot assert a plausible disparity-in-treatment equal protection claim. Therefore, Plaintiff's Fourteenth Amendment challenges would, too, be

        dismissed without prejudice, and Plaintiff will be allowed an opportunity to state his facts, if any, in support of this line of claims.

7.   Finally, Plaintiff's allegations that a certain officer's statement (to the effect that Plaintiff's insistence on receiving kosher meals might, hypothetically, result in a disciplinary sanction against Plaintiff) have not escaped this Court. However, these allegations, being challenges to a wholly speculative development, fail to state a cognizable claim.[6] See Salyer Land Co. v. Tulare Lake Basin Water Storage Dist., 410 U.S. 719, 731 (1973) (legal "adjudication cannot rest on any such 'house that Jack built' foundation"); see also Dawson v. Frias, 2010 U.S. Dist. LEXIS 30513 at *8 (D.N.J. Mar. 30, 2010) ("speculation as to what might or might not happen in the future" cannot serve

---

[6] In the event Plaintiff's challenges based on the alleged officer's statement meant to assert that a mere "threatening"/"harassing" language, by itself, violated Plaintiff's constitutional rights, these challenges are too wholly meritless. Acts of verbal harassment cannot qualify as violations of the Eighth Amendment. See Stepney v. Gilliard, 2005 U.S. Dist. LEXIS 31889, at *19 (N.J.D. Dec. 8, 2005) ("[V]erbal harassment and taunting is neither 'sufficiently serious' nor 'an unnecessary and wanton infliction of pain' under the common meaning of those terms. 'Verbal harassment or profanity alone . . . no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under [Section] 1983") (quoting Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998), and citing Collins v. Graham, 377 F. Supp. 2d 241, 244 (D. Me. 2005)); see also Robinson v. Taylor, 2005 U.S. Dist. LEXIS 20951, at *8-9 (D. Del. Sept. 26, 2005) ("[M]ere verbal harassment does not give rise to a constitutional violation[; even if it is] inexcusable and offensive, [it] do[es] not establish liability under section 1983) (quoting McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) and citing Moore v. Morris, 116 Fed. App'x 203, 205 (10th Cir. 2004); Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 187-89 (D.N.J. 1993)); Abuhouran v. Acker, 2005 U.S. Dist. LEXIS 12864, at *15 (E.D. Pa. June 29, 2005) ("It is well established . . . that . . . verbal harassment, . . . standing alone, do[es] not state a constitutional claim") (citing Dewalt v. Carter, 224 F.3d 607, 612 (7th Cir. 1999); Williams v. Bramer, 180 F.3d 699, 706 (5th Cir. 1999); Maclean v. Secor, 876 F. Supp. 695, 698 (E.D. Pa. 1995)); Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979) (dismissing prisoner's claim that defendant laughed at prisoner and threatened to hang him, since no actual action of any kind was taken by defendant).

as a basis for a valid claim) (citing Rouse v. Pauliilo, 2006 U.S. Dist. LEXIS 17225 (D.N.J. Apr. 5, 2006) (dismissing speculative claim as to hypothetical future retaliation and citing, in turn, Kirby v. Siegelman, 195 F.3d 1285 (11th Cir. 1999)); Pilkey v. Lappin, 2006 U.S. Dist. LEXIS 44418, at *45 (D.N.J. June 26, 2006) ("Plaintiffs [anxiety paraphrased as his claim of] fail[s] to state a claim upon which relief may be granted"); Patterson v. Lilley, 2003 U.S. Dist. LEXIS 11097 (S.D.N.Y. June 20, 2003) (defendants could only be found liable to violations ensuing from an existing condition, not to a speculative future injury). Thus, this last line of challenges will be dismissed with prejudice, as not amenable to cure by repleading.

IT IS, therefore, on this     23rd     day of     October    , 2012,

ORDERED that Plaintiff's application to proceed in this matter in forma pauperis is granted; and it is further

ORDERED that the Clerk shall file Plaintiff's Complaint, Docket Entry No. 1; and it is further

ORDERED that, pursuant to 28 U.S.C. § 1915(b), the Clerk of the Court shall forward, by regular mail, a copy of this Memorandum Opinion and Order to the Attorney General for the State of New Jersey and the warden of the place of Plaintiff's current confinement; and it is further

ORDERED that Plaintiff is assessed a filing fee of $350.00 which shall be deducted from his prison account pursuant to 28 U.S.C. § 1915(b)(2) in the manner set forth below; and it is further

ORDERED that, pursuant to 28 U.S.C. § 1915(b)(1)(A), Plaintiff is assessed an initial partial filing fee and, when funds exist, the agency having custody of Plaintiff shall deduct said initial fee from Plaintiff's prison account and forward it to the Clerk of the Court; and it is finally

ORDERED that, pursuant to 28 U.S.C. § 1915(b)(2), until the $350.00 filing fee is paid, each subsequent month that the amount in Plaintiff's prison account exceeds $10.00, the agency having custody of the plaintiff shall assess, deduct from Plaintiff's account, and forward to the Clerk of the Court payments equal to 20% of the preceding month's income credited to Plaintiff's prison account, with each payment referencing the docket number of this action; and it is further

ORDERED that Plaintiff's Complaint, Docket Entry No. 1, is dismissed; and it is further

ORDERED that Plaintiff's claims asserting: (a) failure to respond to his administrative grievance; and (b) a certain officer's statement that Plaintiff's insistence of having kosher meals might potentially result in a disciplinary charge, are dismissed with prejudice; and it is further

ORDERED that Plaintiff's claims asserting undue denial of kosher meals and racial discrimination by means of denial of kosher meals are dismissed without prejudice; and it is further

ORDERED that the Clerk shall administratively terminate this matter by making a new and separate entry on the docket reading "CIVIL CASE TERMINATED"; and it is further

ORDERED that administrative termination is not a "dismissal" for purposes of the statute of limitations, and that if this § 1983 case is reopened pursuant to the terms of this Order, it is not thereby subject to the statute of limitations bar, provided the original complaint was timely. See Houston v. Lack, 487 U.S. 266 (1988); McDowell v. Delaware State Police, 88 F.3d 188, 191

(3d Cir. 1996); Williams-Guice v. Board of Education, 45 F.3d 161, 163 (7th Cir. 1995); and it is further

ORDERED that Plaintiff may have this case reopened if, within 45 days of the date of the entry of this Memorandum Opinion and Order, Plaintiff files his amended complaint asserting facts in support of his two lines of claims dismissed without prejudice. The Court stresses that Plaintiff shall assert only the relevant facts and prepare his amended pleading in strict compliance with the guidance provided to Plaintiff in this Memorandum Opinion and Order. In addition, Plaintiff must name, as defendants in this matter, the particular individuals who were personally involved in such alleged denial of religious diet and/or in such racial discrimination; and it is further

ORDERED that the Clerk shall serve a copy of this Memorandum Opinion and Order upon Plaintiff, by regular U.S. mail, together with a blank civil complaint form, which Plaintiff may utilize, if he so desires, for the purposes of executing his amended complaint; and it is finally

ORDERED that, in the event Plaintiff timely files his amended complaint, the Court will direct the Clerk to reopen this matter, and will screen Plaintiff's amended pleading for sua sponte dismissal.

        s/Robert B. Kugler
        **ROBERT B. KUGLER**
        **United States District Judge**